438 So.2d 142 (1983)
Raymond LOVE, Appellant,
v.
The STATE of Florida, Appellee.
No. 82-998.
District Court of Appeal of Florida, Third District.
September 20, 1983.
Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before NESBITT, BASKIN and FERGUSON, JJ.
FERGUSON, Judge.
Appellant was convicted and sentenced for first-degree murder. He raises two issues by this appeal: (1) the prosecutor violated his constitutional rights by eliciting testimony from a police officer which indicated that defendant had exercised his right against self-incrimination while under police interrogation; (2) the evidence adduced *143 at trial failed to establish that the homicide was premeditated or committed during the perpetration of a felony.
Facts pertinent to the first issue are as follows. The victim, an elderly woman, was found dead in a bedroom of the house where she lived alone. The cause of death was determined to be strangulation or broken ribs or both. Appellant, a long-time neighbor and family friend of the victim, was arrested after his fingerprints were found inside a bathroom in the house, and on a lamp in the bedroom where the victim was found by the police and a neighbor. A third fingerprint of the defendant was found on an empty soda can.
At police headquarters, appellant gave a full confession which was consistent with the physical evidence found at the crime scene. Bloodstains found on the trousers worn by defendant on the date of the crime matched the victim's blood. The lead investigator in the case, Detective Young, made notes of the confession on a note pad. After taking the oral confession, the detective attempted to have defendant sign a formal statement. He said that he would not without an attorney, and never did.
At trial, appellant attempted to discredit the officer's testimony by showing that the lack of a formal statement evidenced poor investigative work and inaccurate note taking. Cross-examination of the officer by defense counsel was, in part:
Q. Furthermore, [appellant] himself never looked over those notes; did he, Detective Young?
A. No, he didn't.
Q. He never initialed them either; did he?
A. No.
Q. Did you ask him to look over those notes; Detective Young?
A. No, I didn't.
Q. Did you ask him to initial those notes?
A. No.
* * * * * *
Q. It's my understanding that this was the ninth case that you investigated as a lead detective.
A. That's correct.
Q. Okay. In the other eight cases, had you ever taken a confession of anybody?
A. Yes.
Q. How many times?
A. In all of the other cases. All of the other eight cases.
* * * * * *
A. This was the first time I only had just an oral confession.
Q. Every other time you had a stenographic confession; is that correct?
A. Yes.
* * * * * *
A. In the other cases, there were formal confessions where a stenographer had copied down the statement. This was not a formal confession.
Q. Well, a formal confession is better than an oral confession for your purposes; isn't it?
A. Yes.
Q. How is something that wasn't as good as a formal confession  don't you think it would have been good for Mr. Love to have looked over those notes and confirmed the fact he made those statements?
A. I didn't think so at the time, no, sir.
On redirect examination the prosecutor, in showing that the officer was not an inept investigator and that the defendant declined an opportunity to verify the officer's version of his statements, inquired, over appellant's objection:
Q. Did you make an attempt to get a formal statement from [appellant]?
A. Yes, I did.
Q. Answer the question.
A. Yes.
Q. Why do you not have a formal statement of [appellant]?
*144 [There was an objection and a side-bar conference in which defendant's objection was overruled and a motion for mistrial denied].
Q. Again, just yes or no. Did you try to get a formal statement?
A. Yes.
Appellant argues from the established principle that any reference to the silence of an accused in the face of custodial interrogation is improper. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner. "The prosecutor may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." [e.s.] Simpson v. State, 418 So.2d 984, 985 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 801, 74 L.Ed.2d 1004 (1983), citing Jones v. State, 200 So.2d 574 (Fla. 3d DCA 1967) which quotes from Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Essential to those cases, however, is some action consistent with the exercise of the right to remain silent before a confession is given. We think the privilege against self-incrimination is waived after a full confession whether it is oral or written. See Hayes v. State, 400 So.2d 519 (Fla. 3d DCA 1981) (after defendant was advised of his right to remain silent, his free and voluntary denial of knowledge of the matter being inquired into was not an invocation of the Fifth Amendment privilege). Cf. Turner v. State, 414 So.2d 1161 (Fla. 3d DCA 1982) (where defendant, having been warned of his right to remain silent, made certain statements short of a confession but then stated "that is all I am gonna [sic] tell you right now", reference to that ultimate statement by the prosecutor was an improper comment on defendant's exercise of the privilege to remain silent). We hold, accordingly, that refusal to reduce to writing an otherwise complete oral confession is not an exercise of the right to remain silent.
Following are the facts pertinent to the second point on appeal. The victim was last seen alive by a next door neighbor on August 19, 1980. Neighbors became concerned for her welfare on August 21st because they knew she had been ill. On that same day, law enforcement officers entered the home with a neighbor and found the victim dead. The testimony of the medical examiner was that the victim had been dead for a period of between eighteen and thirty-six hours prior to the time he first observed her body in the bedroom on August 21, 1980. Appellant's motorcycle was seen at the victim's house on August 20, 1980.
Detective Young testified that appellant confessed to her that he got to the victim's house on August 20, about 10:00 a.m. and talked with her while they drank beer and Coca-Cola; that about noon as he was leaving he asked for some money and she said no; that he said okay, hugged her and then "something snapped"; that he grabbed her by the throat, dragged her into the bedroom and started beating her with his fists, feet and some object that was on the night stand.
The evidence also shows that on August 20, 1980, appellant cashed a $750 check belonging to the victim, which was made out to him. It was stipulated that the check was forged by appellant.
The indictment charges first-degree murder by premeditation, or while in the course of, or an attempt to commit, a robbery or burglary. Appellant argues that there is no direct evidence that the homicide was "an integral part of the same transaction as the taking of the check", and that the circumstantial evidence tending to establish that fact does not exclude the hypothesis that he obtained it the day before the homicide, or before or after the assault. It is also contended that defendant's statement that "something snapped" before he proceeded to attack the victim, a close family friend, is not consistent with premeditation, which requires the existence of a "thought or design" at some ascertainable point in time prior to the homicide.
In accordance with the instruction on circumstantial evidence the jury could have excluded as a reasonable hypothesis that the victim's check came into appellant's possession *145 at some time other than immediately after the victim had been battered. The facts which have been established by direct proof are (1) appellant visited the victim in the late morning of August 20, 1980, asked her for money and was refused, (2) immediately thereafter he beat and strangled her into unconsciousness, (3) on the afternoon of the same day appellant cashed one of the victim's checks in the amount of $750 made out to himself, which, admittedly had been forged by him. The single link which the jury was required to make circumstantially in order to support a first-degree murderrobbery conviction is that the purpose of the attack was to prevent the victim from resisting the taking of the check (which was in fact later forged and cashed) or any other property belonging to her. Along with the direct proof, the circumstantial evidence connected the chain and established an underlying robbery to the exclusion of any other reasonable hypothesis.
Affirmed.
NESBITT, Judge (specially concurring):
I concur in the majority opinion with regard to the first issue only. As concerns the second issue, I agree that the jury verdict of first degree murder can be and should be sustained, but disagree that felony murder is the proper theory for doing so.
In a felony murder prosecution, both the homicide and the underlying felony must be proved beyond a reasonable doubt. Robles v. State, 188 So.2d 789 (Fla. 1966). Furthermore, the homicide and felony must be an integral part of the same transaction. See Campbell v. State, 227 So.2d 873, 878 (Fla. 1969), cert. dismissed, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970); Jefferson v. State, 128 So.2d 132, 136-37 (Fla. 1961).
The only evidence linking the misappropriation of the check with the murder was that the appellant cashed the check on the same day as the murder. Thus, the evidence of a felony murder was purely circumstantial.
Where evidence of a crime is purely circumstantial, the evidence must be inconsistent with any reasonable hypothesis of innocence. Davis v. State, 90 So.2d 629 (Fla. 1956); D.M. v. State, 394 So.2d 520 (Fla. 3d DCA 1981). The question of whether the evidence excludes all reasonable hypotheses of innocence is one for the jury to determine, but such determination must be based upon competent, substantial evidence. Rose v. State, 425 So.2d 521, 523 (Fla. 1982). I would hold that in this case where the appellant was not only a long-time neighbor and family friend of the victim, but also a frequent visitor to her house, the evidence that the check was cashed on the day of the murder was not substantial evidence for purposes of excluding the hypothesis that the check was taken on some other occasion.
Admittedly, the evidence as to premeditation in this case is circumstantial also. Where premeditation is sought to be proved by circumstantial evidence, the jury must again exclude all reasonable hypotheses of innocence of premeditation. Hall v. State, 403 So.2d 1319 (Fla. 1981); Tien Wang v. State, 426 So.2d 1004 (Fla. 3d DCA 1983). Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted. Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).
Examining these factors in light of the evidence in this case, it is clear that there was absolutely no evidence of difficulties between the parties previous to the day of the murder. However, premeditation may occur a moment before the act. Sireci v. State, supra. The remainder of the evidence as to premeditation showed that the appellant asked the victim for money, but was refused. He then dragged her from somewhere near the door of the house into the bedroom where he placed her between two beds, beat her with his fists and feet, and eventually removed a blunt object from a nearby nightstand in order to finish the job. I would hold that this was competent, substantial evidence from which the jury *146 could infer premeditation and exclude as unreasonable all hypotheses of innocence thereof.