973 So.2d 634 (2008)
Javier Dejesus VENTURA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-872.
District Court of Appeal of Florida, Third District.
January 30, 2008.
Rehearing Denied February 21, 2008.
*635 Bennett H. Brummer, Public Defender, and Roy A. Heimlich, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Lisa A. Davis, Assistant. Attorney General, for appellee.
Before RAMIREZ, SHEPHERD, and CORTIÑAS, JJ.
RAMIREZ, J.
Javier Dejesus Ventura appeals his conviction on two counts of robbery with a weapon, and his sentence to thirty years as a prison releasee reoffender (PRR). He claims the trial court erred in: (1) denying his motion for mistrial and in failing to give an appropriate curative instruction after the lead detective commented upon his right to remain silent, and (2) relying on hearsay to sentence him as a PRR. We affirm.

I.
Ventura was charged with three counts of armed robbery with a deadly weapon (a pellet rifle) of three different victims. At trial, Vladimiro Rojas testified that at about two a.m. on October 31, 2002, he was walking from a café toward his car at Collins Avenue and 8th Street with Silvina Burstein and her friend. At the corner, a car pulled up next to them. The car was a brown Ford, a Crown Victoria or a Grand Marquis. Two men got out with guns and demanded their property. One man was skinny; the other was fat. The skinny one had his head shaved, was wearing a white and black tank shirt, and was holding a *636 gun that looked like a rifle. Rojas gave them his cellular phone and jacket. The two men took his friends' things and ran back to their car.
When the car left, Rojas summoned police and reported what had happened. The police officers told him they had stopped the car he had described. An officer drove Rojas and his friends to where they had stopped the car, on the MacArthur Causeway. They brought out the suspects. Rojas identified. Ventura as the person who pointed the gun at him, and he also identified the car. He also identified Ventura in the courtroom as the person who had pointed the gun at him.
Silvina Burstein corroborated Rojas's testimony. She reported that at about two a.m. on October 31, 2002, she was walking with Rojas and her friend when she was robbed. Two men came at her and demanded her property; one of them had a gun-he was tall and thin with short hair. She gave them her purse, with her cell phone and credit cards. They drove off in a big, old greyish silver car. Police arrived and subsequently told Burstein that a car had been stopped on the MacArthur Causeway. The police took the victims there, and she identified the car, and identified Ventura as one of her assailants. She also identified Ventura in the courtroom.
Detective Teppenberg identified a photograph of Rojas, with the property taken from him in the robbery and subsequently recovered from inside the car where Ventura was apprehended, a photograph of Burstein, with the property taken from her in the robbery and subsequently recovered, and a photograph of a BB rifle recovered by police during the investigation. During Detective Teppenberg's testimony, the following transpired:
Q. And when you got there what did you do?
A. Well, I spoke to the victims and to the officer. [Their] stories were consistent to that offense report about what had occurred in the robbery. I also had requested I.D. to take pictures of the recovered stolen property. Along with the victims, the defendant's [sic] wouldn't give any statements.
[Defense counsel]: I reserve a motion on that.
A few moments later, Detective Teppenberg further testified:
Q. You were informed by the officer what they did [at] the scene?
A. Yes. The suspects were in custody and the defendant then declined to make statements.
[Defense counsel]: I reserve a motion.
THE COURT: Noted.
The State rested following Detective Teppenberg's testimony, and the jury was removed from the courtroom. Defense counsel then moved for a mistrial on the ground that Detective Teppenberg had improperly told the jury that Ventura had refused to make a statement explaining the stolen property in the vehicle when he was entitled to exercise his right to remain silent, and such comment before the jury was improper and highly prejudicial.
The trial court commented that the detective's remarks had been improper, but indicated they did not warrant a mistrial. The court denied the motion. The jury was then brought in, and closing arguments proceeded.
On Ventura's motion, the court granted a judgment of acquittal as to Count 2 of the Information, alleging a robbery from the third victim, who had not testified. Only Counts 1 and 3 were submitted to the jury. The jury found Ventura guilty of two counts of robbery with a weapon, as a lesser offense of armed robbery with a *637 deadly weapon. Ventura moved for a new trial on the ground that Detective Teppenberg's comments on Ventura's exercise of his right to remain silent had deprived him of a fair trial. The trial court denied the motion. The trial court sentenced Ventura to thirty years in state prison as a PRR. Ventura then moved, pursuant to Rule 3.800(b), to correct the sentence on the ground that the State had not submitted competent proof that he met the criteria for sentencing as a PRR sentence.
The trial court denied the motion, holding that the documents in the record were under seal, and thus self-authenticating documents, and that they authenticated themselves as public records admissible under the hearsay exception for public records, under Yisrael v. State, 938 So.2d 546 (Fla. 4th DCA 2006). The trial court further held that the documents were public records admissible under the public records exception to the hearsay rule under Yisrael. The trial court found that Ventura's release date was sufficiently shown by these public records.

II.
The State does not contest the fact that it cannot use Venturas silence to infer guilt. See Love v. State, 438 So.2d 142, 144 (Fla. 3d DCA 1983). It attempts to defend the detectives statement on the basis that the prosecutor did not elicit the testimony from Detective Teppenberg. We fail to see how this makes the statement any less harmful. The lead detective is as much a member of the prosecution team as the attorney asking the question. The fact that the prosecutor did not elicit the statement may mitigate the attorneys action, but the State has an obligation to prepare its witnesses. Even the most cursory trial preparation should have avoided the detective's testimony. Thus, whether intentional or negligent, the prosecution is not guiltless.
But neither is defense counsel, who merely reserved a motion. By not requesting an immediate sidebar, counsel left open the possibility that the witness would repeat the accusatory silence of Ventura, as indeed occurred. Counsel also could have attempted to establish how these unsolicited comments crept into the trial, whether it was the detective's idea to poison the jury, or whether it had been planned with the prosecutor. This detective testified that she had been with the Miami Beach Police Department for twenty-two-and-one-half years. She was a trained criminal investigator. We fail to see how the detective's comment, twice repeated, could have been anything other than an intentional cheap shot at Ventura's constitutional rights. Yet, defense counsel's lackadaisical attitude would seem to indicate that this Court is more offended than defense counsel, who, on this record, never made a valid objection, but merely reserved one. There was no contemporaneous objection.
"Error involving comment on silence must be evaluated under a harmless error analysis." State v. Hoggins, 718 So.2d 761, 772 (Fla.1998). "The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict . . ." State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986). We conclude that the detective's testimony was improper, but harmless beyond a reasonable doubt given the overwhelming evidence of guilt.

III.
As to Ventura's argument that the trial court erred in relying on hearsay to sentence him as a PRR, no such objection *638 was made by defense counsel during the sentencing hearing. Furthermore, Ventura has never alleged that the document relied upon by the court contains an error. Finally, had a proper, timely objection been made, we agree with Yisrael v. State, 938 So.2d at 546, that the letter in evidence could be properly considered by the trial court under the public records exception to the hearsay rule, subsection 90.803(8), Florida Statutes (2005). subsection 90.803(8) provides that:
Public Records and Reports: Records, reports, statements reduced to writing, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to matters which there was a duty to report, excluding in criminal cases matters observed by a police officer or other law enforcement personnel, unless the sources of information or other circumstances show their lack of trustworthiness. The criminal case exclusion shall not apply to an affidavit otherwise admissible under s. 316.1934 or s. 327.354.
As this Court stated in Ward v. State, 965 So.2d 308 (Fla. 3d DCA 2007):
Under Florida law, the Department has a statutory duty to obtain and place in its permanent records information as complete as may be practicably available on every person who may become subject to parole . . . An inmate's release date is the type of information falling within this statutory duty.
Id. at 309 (citations omitted).
Affirmed.