29 So.3d 1086 (2010)
Javier Dejesus VENTURA, Petitioner,
v.
STATE of Florida, Respondent.
No. SC08-483.
Supreme Court of Florida.
February 18, 2010.
*1087 Carlos J. Martinez, Public Defender, Roy A. Hiemlich and Andrew Stanton, Assistant Public Defenders, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, Richard L. Polin, Bureau Chief, Angel L. Fleming and Rolando A. Soler, Assistant Attorneys General, Miami, FL, for Respondent.
PER CURIAM.
We have for review Ventura v. State, 973 So.2d 634 (Fla. 3d DCA 2008), in which the Third District Court of Appeal affirmed the admissibility of a Department of Corrections release-date letter as a permissible means of establishing the defendant's status as a prison-releasee reoffender. See id. at 638. In the process, the Third District relied upon the reasoning and rule of law articulated in Yisrael v. State, 938 So.2d 546 (Fla. 4th DCA 2006) (en banc) (Yisrael I), disapproved in part, 993 So.2d 952 (Fla.2008). See Ventura, 973 So.2d at 638. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
We stayed proceedings in this case pending our disposition of Yisrael, in which we (1) approved the decision of the First District in Gray v. State, 910 So.2d *1088 867 (Fla. 1st DCA 2005), and (2) disapproved the reasoning and rule of law articulated by the Fourth District in its underlying decision, but ultimately approved the result reached by that court on other grounds. See Yisrael v. State, 993 So.2d 952, 960-61 (Fla.2008) (Yisrael II). We then accepted jurisdiction in this case to resolve the conflict between Ventura and the decisions of this Court in Yisrael II and State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
With regard to the Yisrael issue, the Third District relied upon the rule articulated in Yisrael I to erroneously state that a Department of Corrections (DOC) release-date letter standing alone is admissible under the public-records exception to the hearsay rule to establish a defendant's criminal history for the purposes of imposition of a prison-releasee-reoffender sentence. This Court disapproved that rule in Yisrael II. However, upon review of the appellate record, it is clear that, although not reflected in the opinion of the Third District, the trial court was actually supplied with a signed release-date letter, written under seal, and an attached Crime and Time Report. In Yisrael II, we held that these DOC records can together be used to render the entire report admissible as a public record. See Yisrael II, 993 So.2d at 960-61 (approving usage of the signed release-date letter, written under seal, as authentication of an attached Crime and Time Report); see also §§ 90.803(6), 90.902(11), Fla. Stat (2003). Further, Ventura concedes that both documents (i.e., the signed release-date letter under seal and the Crime and Time Report) were provided to the trial court. Accordingly, as we did in Yisrael II, we approve the ultimate result reached by the Third District Court of Appeal below because the signed and under seal release-date letter provided in this case was used as a permissible means of authenticating an attached Crime and Time Report, but disapprove its reliance upon the rule expressed in Yisrael I. See Yisrael II, 993 So.2d at 960-61; see also Smith v. State, 990 So.2d 1162, 1164-65 (Fla. 3d DCA 2008); Parker v. State, 973 So.2d 1167, 1168-69 (Fla. 1st DCA 2007), review denied, 1 So.3d 173, 2009 WL 427313 (Fla. 2009).
Next, the district court improperly utilized an "overwhelming evidence" test when considering whether the impermissible testimony of a witness which clearly undermined and violated the Fifth Amendment right to remain silent constituted harmless error. Unlike some evidentiary errors, such as the admission of a cumulative or irrelevant photograph, a comment on the right to remain silent strikes at the heart of our criminal justice system. This Court has clearly stated that it is constitutional error to penalize an individual for exercising the Fifth Amendment privilege; therefore, the prosecution may not introduce during trial the fact that an individual has relied upon this protection in the face of accusation. See Simpson v. State, 418 So.2d 984, 984-85 (Fla.1982) (quoting Jones v. State, 200 So.2d 574, 576 (Fla. 3d DCA 1967)); see also DiGuilio, 491 So.2d at 1131. As we stated in DiGuilio:
It is clear that comments on silence are high risk errors because there is a substantial likelihood that meaningful comments will vitiate the right to a fair trial by influencing the jury verdict and that an appellate court, or even the trial court, is likely to find that the comment is harmful under Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)].
491 So.2d at 1136-37. Accordingly, commenting on the silence of an accused is not a viable strategy for obtaining convictions, *1089 and any commentdirect or indirectby anyone at trial on this right is constitutional error that should be avoided. See DiGuilio, 491 So.2d at 1136, 1139.
During the trial proceedings below, a detective made two comments with regard to Ventura's silence, as follows:
A. Along with the victims, the defendant's [sic] wouldn't give any statements.

. . . .
A. Yes. The suspects were in custody and the defendant then declined to make statements.

(Emphasis supplied.) The Third District determined that the comments were improper and stated: "We fail to see how the detective's comment, twice repeated, could have been anything other than an intentional cheap shot at Ventura's constitutional rights." Ventura, 973 So.2d at 637. The court clearly and correctly recognized the egregious conduct. However, the district court then held that the error was "harmless beyond a reasonable doubt given the overwhelming evidence of guilt." Id.
Unfortunately, the Third District expressed an incorrect harmless error analysis. In DiGuilio, we fully explicated the application of the harmless error doctrine to a comment on a defendant's right to remain silent. In doing so, we explicitly expressed that the harmless error analysis is not an "overwhelming-evidence test." DiGuilio, 491 So.2d at 1139.
[H]armless error analysis must not become a device whereby the appellate court substitutes itself for the jury, examines the permissible evidence, excludes the impermissible evidence, and determines that the evidence of guilt is sufficient or even overwhelming based on the permissible evidence. . . .

Overwhelming evidence of guilt does not negate the fact that an error that constituted a substantial part of the prosecution's case may have played a substantial part in the jury's deliberation and thus contributed to the actual verdict reached, for the jury may have reached its verdict because of the error without considering other reasons untainted by error that would have supported the same result.
. . . .
The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. Application of the test requires not only a close examination of the permissible evidence on which the jury could have legitimately relied, but an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict . . . .
. . . .
. . . The test must be conscientiously applied and the reasoning of the court set forth for the guidance of all concerned and for the benefit of further appellate review. The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on *1090 the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
DiGuilio, 491 So.2d at 1136, 1138-39 (citations omitted) (emphasis supplied) (quoting People v. Ross, 67 Cal.2d 64, 60 Cal.Rptr. 254, 429 P.2d 606, 621 (1967) (Traynor, C.J., dissenting), rev'd, 391 U.S. 470, 88 S.Ct. 1850, 20 L.Ed.2d 750 (1968)).
Since restating the test in DiGuilio, this Court has provided further guidance on the correct analysis of harmless error. For example, in Rigterink v. State, 2 So.3d 221 (Fla.2009), petition for cert. filed, No. 08-1229, 7 U.S.L.W. 3563 (Mar. 31, 2009), this Court discussed and applied the harmless error analysis in a circumstance where competent, substantial evidence supported the convictions, but the record did not demonstrate beyond a reasonable doubt that the error did not contribute to the verdict.
In sum, the evidence suggests that Rigterink has entangled himself in a web of deceit and these circumstances may indicate guilt. However, our harmless-error test is not guided by a sufficiency-of-the-evidence, correct-result, not-clearly-wrong, substantial-evidence, more-probable-than-not, clear-and-convincing, or overwhelming-evidence test. If any of these were the proper test, we might agree that the admission and publication of Rigterink's videotaped interrogation constituted harmless error. The simple answer to the simple question of whether there is competent, substantial evidence to support the charges that Rigterink committed these crimes is "Yes." However, the actual question that we must askand the constitutional protection that we must addressare not so simple. We have specifically rejected sufficiency-of-the-evidence approaches through our decision in DiGuilio, and we will not recede from established precedent by, on the one hand, paying lip service to its requirements and then, on the other, employing reasoning that would be clearly contrary to the pertinent legal standard. . . .
Under a proper analysis, we conclude that the jury most assuredly, and very seriously, considered and substantially included Rigterink's videotaped interrogation in reaching its verdicts. Therefore, the erroneous publication and admission of this videotape during Rigterink's capital trial "contributed to" his convictions. . . . [W]e reverse Rigterink's convictions and sentences and remand for a new capital trial during which this videotape is excluded. This is not because Rigterink is innocent; rather, it is because the rules established to guard fundamental constitutional protections were not followed, and, under these facts, we cannot say that the videotapewhich should have been suppressed based upon proper legal analysisdid not "contribute to" his convictions. The murders committed in this case were horrific, gruesome, and worthy of condemnation; moreover, there is evidence to support the verdicts returned by the jury. However, the rule of law must prevail and we must not allow the ends of punishment to trump the means that our state and federal Constitutions require.
. . . .
We are not nor do we consider ourselves a super-jury; rather, we are an appellate tribunal charged with the task of determining "whether there is a reasonable possibility that the error affected the verdict." If such a possibility exists, it is our duty to remand for a new trial, which shall be free from the offending error. The test is not whether *1091 the jury reached what we believe to be the correct result but is, instead, whether a reasonable possibility exists that the constitutional violation contributed to the defendant's convictions.

Id. at 255-57 (citations omitted) (some emphasis supplied) (quoting DiGuilio, 491 So.2d at 1139).
The district court noted only one factor in the harmless error analysis (i.e., permissible evidence of guilt), but that one factor is not the determinative test. We have explicitly rejected the overwhelming evidence test as a proper analysis of harmless error. Specifically, the decision of the Third District does not address a proper analysis and does not discuss whether there is a reasonable possibility that the constitutional error affected the verdict. Our colleague in dissent suggests that our decision is based on an erroneous assumption that the district court failed to give consideration to the correct harmless error analysis. We cannot assume that an analysis was conducted or review that which remains hidden behind the written opinion. In other words, the decision does not reflect any consideration by the appellate court of whether the impermissible comments contributed to the conviction, as required in an analysis of harmless error. Instead, as written, the appellate court appears to have "substitute[d] itself for the trier-of-fact by simply weighing the evidence" instead of focusing on the "effect of the error on the trier-of-fact." DiGuilio, 491 So.2d at 1139 (emphasis supplied). It is important for the test to be "conscientiously applied and the reasoning of the court set forth for the guidance of all concerned and for the benefit of further appellate review." Id.
The harmless error rule functions to conserve judicial labor while providing an "equal degree of protection for the constitutional right to a fair trial, free of harmful error." Id. at 1135. The analysis of the impermissible comments in the decision below and the announced principle of law does not demonstrate this balance.
Accordingly, we quash and remand to the Third District Court of Appeal for reconsideration upon application of our decision in DiGuilio. In addition, we approve the ultimate result reached by the Third District on the Yisrael issue, but disapprove its analysis and reasoning based upon the rule expressed in Yisrael I.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, LABARGA, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.
CANADY, J., dissenting.
I disagree with the majority's decision to quash and remand the decision of the Third District Court of Appeal. On the Yisrael[1] issue, the majority recognizes that the Third District reached the correct result. On that basis, I would discharge jurisdiction on the Yisrael issue. For the reasons I will explain, I would also discharge jurisdiction on the DiGuilio[2] issue.
With respect to the DiGuilio issue, I disagree with the majority's conclusion that "the district court improperly utilized an `overwhelming evidence test'" and therefore "expressed an incorrect harmless error analysis." Majority op. at 1088-89. This is not a case in which the appellate court failed to acknowledge the DiGuilio standard. The Third District accurately *1092 stated the DiGuilio standard: "The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict." Ventura v. State, 973 So.2d 634, 637 (Fla. 3d DCA 2008) (emphasis added) (quoting DiGuilio, 491 So.2d at 1138).
Notwithstanding this express and correct acknowledgement of the DiGuilio standard by the Third District, the majority here concludes that the Third District's decision "does not reflect any consideration by the appellate court of whether the impermissible comments contributed to the conviction." Majority op. at 1091. For the majority to reach that conclusion, it must assume that the district court failed to give any consideration to the precise test which the district court stated as the governing test. Such an assumption is unwarranted.
In condemning the district court's reference to "overwhelming evidence," the majority condemns an element of harmless error analysis which this Court itself has repeatedly employed. In numerous cases, we have expressly relied on the existence of overwhelming evidence of guilt in reaching the conclusion that an error was harmless. See, e.g., Hojan v. State, 3 So.3d 1204, 1210 (Fla.2009) ("Based on this other extensive evidence, we conclude that even if admission of the statement was error, it was harmless error."), cert. denied, ___ U.S. ___, 130 S.Ct. 741, ___ L.Ed.2d ___, 78 U.S.L.W. 3319 (2009) (No. 09-5780); Fitzpatrick v. State, 900 So.2d 495, 517 (Fla.2005) (stating in harmless error analysis that "[t]here was overwhelming permissible evidence of Fitzpatrick's guilt"); Hutchinson v. State, 882 So.2d 943, 952 (Fla.2004) (stating in harmless error analysis that improperly admitted "testimony adds little, if anything, to the overwhelming evidence of guilt"); Walton v. State, 847 So.2d 438, 448 (Fla.2003) ("Clearly, taken in conjunction with the presence of the overwhelming evidence before the court supporting its conclusions as to Walton's leadership role in the burglary planning, this mistaken statement by the trial court within its final order was harmless."); Chavez v. State, 832 So.2d 730, 754, 762 (Fla.2002) (stating that "given the overwhelming evidence of Chavez's guilt, the error in admitting his last confession would be harmless" and stating that "[g]iven the overwhelming evidence of Chavez's guilt, on this record, there is no possibility that admission of the [bloody] mattress contributed to the outcome of the proceedings"); Henyard v. State, 689 So.2d 239, 248 (Fla.1996) (relying in harmless error analysis on conclusion that "the other evidence presented at trial of Henyard's guilt was extensive and overwhelming").
There is no question that "overwhelming evidence" cannot be the alpha and omega of harmless error analysis. Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)which articulated the harmless error standard from which the DiGuilio standard was deriveditself questioned the California courts' "emphasis, and perhaps overemphasis, upon the court's view of `overwhelming evidence.'" Nonetheless, in Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), the Court concluded that the erroneous admission of the confessions of codefendants who did not take the stand was harmless beyond a reasonable doubt under the Chapman standard because "apart from [those confessions] the case against Harrington was so overwhelming." See also Schneble v. Florida, 405 U.S. 427, 431, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) (referring in harmless error analysis to "overwhelming" "independent evidence of guilt").
*1093 In determining whether beyond a reasonable doubt an error did not contribute to a guilty verdict, the weight of the properly admitted evidence must be evaluated. The United States Supreme Court has recognized that in harmless error analysis, an error must "be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." Arizona v. Fulminante, 499 U.S. 279, 308, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (emphasis added). Likewise, in DiGuilio we acknowledged the required "analysis of the strength and nature of the permissible evidence of guilt and of the strength and nature of the impermissible" matters presented to the jury. 491 So.2d at 1137 (emphasis added). A conclusion that the properly considered evidence of guilt is overwhelming may naturally flow from such a quantitative assessment or analysis of the strength and nature of the evidence.
As the precedents mentioned above amply demonstrate, a reviewing court's reference to overwhelming evidence of guilt does not establish that the court employed an incorrect test for harmless error. I therefore dissent from the majority's application of a requirement which is inconsistent with the precedents of this Court.
POLSTON, J., concurs.
NOTES
[1] Yisrael v. State, 993 So.2d 952 (Fla.2008).
[2] State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).