CIKLIN, J.
 

 The appellant, Leroy Singh, appeals from his conviction of second degree murder with a firearm for the death of Kevin Padmore. We are called upon to decide whether the trial court gave an erroneous jury instruction on the lesser included offense of manslaughter by requiring the same intent element of the greater offense of second degree murder. Additionally, we must determine whether the lower court erred in not permitting two defense witnesses to testify. We affirm, finding that the jury instruction was not fundamentally erroneous because it allowed the jury to find manslaughter by culpable negligence rather than an intent to kill. We also find that the proffered evidence of the two witnesses could not have properly added to Singh’s theory of self-defense.
 

 Singh was initially charged along with co-defendant Donald Budhai with first degree murder. Before trial, Budhai entered into a plea agreement and was deported.
 

 The evidence at trial described a shooting at an apartment where five friends were gathered. Around four to five o’clock in the afternoon, Singh arrived at the apartment and had a confrontation with Padmore, with whom he previously had a friendship. Singh then left without incident. Twenty minutes to a half-hour later, Singh returned with two companions and again confronted Padmore. Padmore decided to walk away and turned back into the apartment when Singh pulled out a gun from his waist area and started shooting. Padmore was struck in the back with a bullet and later died. Three individuals who were at the scene witnessed Singh pull out a gun and start shooting. Two witnesses stated that they had observed Singh in possession of a gun prior to the shooting and one witness, who was with Padmore all day, testified that Padmore did not have a gun. When Singh was taken into custody, he admitted that he shot Padmore but did it because Padmore “was reaching for his gun.”
 

 At trial, defense counsel sought to present the testimony of Singh’s father and uncle who themselves were involved in confrontations with Padmore. After a proffer, the trial court disallowed the testimony, finding that there was no evidence to suggest that Singh was aware of these confrontations in order to be relevant to his theory of self-defense.
 

 The jury returned a verdict for the lesser included offense of second degree murder with a firearm. The jury also made the specific finding that appellant possessed and discharged a firearm and that, as a result of discharging the firearm in his possession, he caused the death of Kevin Padmore.
 

 Jury Instructions
 

 Singh argues that the jury instruction on the lesser included offense of manslaughter was fundamentally erroneous because it required the finding of an intent to kill, thereby precluding the jury from choosing between two possible verdicts: second degree murder or manslaughter.
 

 The following jury instruction
 
 [1]
 
 was given to the jury on manslaughter, in relevant part:
 

 
 *850
 
 To prove the crime of manslaughter, the State must prove the following two elements beyond a reasonable doubt:
 

 One. Kevin Padmore is dead.
 

 Two. Leroy Singh intentionally caused the death of Kevin Padmore or the death of Kevin Padmore was caused by the culpable negligence of Leroy Singh.
 

 [[Image here]]
 

 In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.
 

 I will now define culpable negligence for you. Each of us has a duty to act reasonably toward others. If there is a violation of that duty, without any conscious intent to harm, that violation is negligence.
 

 But culpable negligence is more than a failure to use ordinary care toward others.
 

 In order for negligence to be culpable, it must be gross and flagrant.
 

 Culpable negligence is a course of conduct showing reckless disregard for human life, or of the safety of persons exposed to it’s dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to consequences or which shows wantonness or recklessness, or a grossly careless disregard for the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights.
 

 The negligent act or omission must have been committed with an utter disregard for the safety of others.
 

 Culpable negligence is consciously doing an act or following a course of eon-duct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury.
 

 In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.
 

 Fla. Std. Jury Instr. (Grim.) 7.7. (2007).
 

 Recently in
 
 State v. Montgomery,
 
 No. SC09-332, — So.3d -, -, 2010 WL 1372701, *1 (Fla. Apr. 8, 2010), the Florida Supreme Court found that “the crime of manslaughter by act does not require the State to prove that the defendant intended to kill the victim.” Therefore, “the use of the standard jury instruction on manslaughter, which required that the State prove the defendant’s intent to kill the victim, constituted fundamental error.”
 
 Id.
 
 In
 
 Montgomery,
 
 the trial court instructed the jury that the State had to prove “two things: The first being again that [the victim] is dead and, secondly, that Mr. Montgomery intentionally caused her death ... it is not necessary for the state to prove that the defendant had a premeditated design to cause death.”
 
 Montgomery v. State,
 
 — So.3d-,-(Fla. 1st DCA 2009). This instruction imposed “a more stringent finding of intent upon manslaughter than upon second-degree murder,” even though “manslaughter is just one step removed from second-degree murder.” — So.3d at -, -.
 
 See also Hankerson v. State,
 
 831 So.2d 235, 237 (Fla. 1st DCA 2002) (“The addition of an element regarding a lesser included offense [in a jury instruction] ... taints the underlying fairness of the entire pro-
 
 *851
 
 eeeding” and constitutes fundamental error.).
 

 Like the defendant in
 
 Montgomery,
 
 Singh was convicted of second degree murder and the jury was instructed on manslaughter. Unlike
 
 Montgomery,
 
 the instruction given by the trial court allowed the jury two options in finding the second element of manslaughter by act; either that appellant “intentionally caused the death” or the death “was caused by the culpable negligence” of appellant. The court in
 
 Salonko v. State,
 
 No. 1D08-4879, — So.3d -, -, 2010 WL 480844, *2 (Fla. 1st DCA Feb. 12, 2010), found this extra instruction to be enough to distinguish the case from
 
 Montgomery,
 
 explaining that the fundamental error in
 
 Montgomery
 
 “does not exist when the trial court gives an instruction on manslaughter by culpable negligence.” “Although the jury found, by its second-degree murder verdict, that Appellant did not intend to kill the victim, based on the instructions given, it could have returned a verdict for the lesser-included offense of manslaughter by culpable negligence while still honoring its finding that there was no intent to kill.”
 
 Id. See also Nieves v. State,
 
 22 So.3d 691, 692 (Fla. 2d DCA 2009) (“Furthermore, unlike
 
 Montgomery
 
 and
 
 Zeigler,
 
 the jury in Nieves’ case was also instructed on the lesser-included offense of manslaughter by culpable negligence.”).
 

 The instruction given by the trial court did not constitute error.
 

 Testimony of Two Defense Witnesses
 

 Singh asserts that the testimony of his father and uncle should have been admitted because it was proof of Padmore’s aggressive and threatening manner toward him. This testimony, Singh argues, would have supported his theory of self-defense.
 

 The proposed testimony involved an alleged incident where the victim, Padmore, came to the outside of Singh’s house and confronted Singh’s father and uncle in a manner that was “rude, threatening and aggressive.” After the testimony was proffered, the trial court recognized and specifically found that neither witness could positively state that Singh himself had heard or saw what happened.
 

 Courts give wide latitude in allowing evidence to support a theory of self-defense.
 
 See Nelson v. State,
 
 739 So.2d 1177, 1178 (Fla. 4th DCA 1999) (‘“[I]f there is the slightest evidence of an overt act by the victim which may be reasonably regarded as placing the defendant in imminent danger, all doubts as to the admission of self-defense evidence must be resolved in favor of the accused.’” (citation omitted));
 
 Borders v. State,
 
 433 So.2d 1325, 1326 (Fla. 3d DCA 1983) (“In a homicide prosecution a defendant should be permitted the widest of latitude when introducing evidence in support of a self-defense theory.”). Evidence of past threats could support a reasonable fear of Padmore at the time of the incident.
 
 See Johnson v. State,
 
 718 So.2d 848, 849 (Fla. 5th DCA 1998) (“In establishing self-defense, evidence either of the victim’s reputation for violence or of specific prior acts of violence is admissible to prove the victim’s dangerous character when the defendant knew of the victim’s violent acts or of his violent reputation at the time the alleged offense occurred.”). However, “[s]uch evidence is admissible only if the defendant knew of the violent acts or reputation because it may ‘reveal the reasonableness of the defendant’s apprehension at the time of the incident. ”
 
 Id.
 
 (citation omitted). “Testimony of persons other than the defendant regarding the victim’s specific acts of violence is not relevant because ‘it sheds no light on the defendant’s state of mind; it shows only that the victim had a propensity for violence.’ ”
 
 Id.
 
 (citation omitted). There was no evidence that Singh was aware of the incident described by his father and uncle.
 

 
 *852
 
 While Singh did testify to a previous incident with Padmore, there was no evidence linking that incident with the one described by the two witnesses.
 

 Accordingly, we find no reversible error and affirm.
 

 Affirmed.
 

 GERBER, J., and COX, JACK S„ Associate Judge, concur.
 

 [1]
 

 . Since Singh’s trial, the Florida Supreme Court has added additional language to clari
 
 *850
 
 fy that the requisite intent for manslaughter by act is
 
 intent to commit an act
 
 that caused the death of the victim and not an intent to kill the victim.
 
 In re Standard Jury Instructions in Criminal Cases
 
 — Report
 
 No. 2007-10,
 
 997 So.2d 403 (Fla.2008).