GERBER, J.
The defendant appeals his convictions for second degree murder and three counts of aggravated assault with a firearm. He argues the trial court abused its discretion by not allowing him to elicit testimony regarding the dangerousness of the neighborhood where the crime occurred. He also argues the trial court used an erroneous standard jury instruction on the lesser-included offense of manslaughter. We affirm.
The “dangerousness” issue arose during opening statements. According to the state, the defendant and the victim argued at a home. The victim walked out to the street and called for the defendant to fight, but the defendant went inside. Later, the defendant went outside, yelled “who flat my f — ing tires,” and walked with a gun in each hand toward the victim. The defendant hit the victim with one gun, they struggled, and the defendant shot the victim with the other gun. According to witnesses, the victim had not touched or moved towards the defendant before the defendant hit him. The victim also did not have a gun or other weapon. After shooting the victim, the defendant pointed one of the guns at three people nearby and yelled “who else wants some?”
During the defendant’s opening statement, he said “[t]he evidence is going to show you and take you into ... a world that they live in ... a world where the environment was a dangerous one.” He later told the jury to “listen to the environment ... this is a different world that they *409 live in where ... he felt that he had to protect himself.”
Following opening statements, the state moved to preclude the defendant from introducing evidence that “this is a bad neighborhood.” The state argued such evidence was not relevant to the defendant’s self-defense claim. The state also contended such evidence would paint the victim and the witnesses as bad people. The defendant requested the trial court to wait to rule on the motion until he decided whether to testify. However, the court granted the motion, reasoning that the neighborhood’s alleged dangerousness was not relevant. The court also found that, even if the neighborhood’s alleged dangerousness was relevant, the probative value was substantially outweighed by the danger of unfair prejudice. The trial court stated that, if the defendant chose to take the stand, he still could testify about any threat which the victim presented.
The defendant indeed took the witness stand for that purpose. He testified that, after the police conducted a drug raid in the neighborhood, the victim approached the home and accused him of being a snitch. The defendant said he told the victim to leave. The victim allegedly told the defendant to “shut the f— up ... you do not know who [I am], or what I will do ... you will not leave here tonight, I guarantee you that ... you will not leave here tonight.” The defendant testified he interpreted those words as a serious threat to his life “because this is the hood and ... people don’t make threats like that and don’t carry them out and if someone say something like that you take it seriously and you never know what this person is going to do to you.” The defendant said he went inside. However, the victim and another man allegedly came to the door saying they wanted the defendant to come outside. The defendant testified he told the men to leave and that he did not want any trouble. According to the defendant, he later went outside, saw a crowd, and heard the victim say “I told you, you not going to leave here tonight.” The defendant said he noticed that two of the tires on his girlfriend’s car were slashed, which he believed was done to keep him from leaving the neighborhood. The defendant took a gun from the car’s glove box, walked around the car, and saw the victim walking towards him. The defendant allegedly asked the victim why he flattened his tires. The defendant testified the victim responded, “I told you, you wasn’t leaving here tonight.” The defendant swung his hand and hit the victim, they struggled, and, according to the defendant, the gun accidentally fired. The defendant said he then feared for his life because the crowd had been cheering for the victim, and he felt that someone might shoot him. The defendant testified that he tried to scare the crowd away, and then fled. On cross-examination, the defendant conceded that he did not see the victim with any weapon, and that he knew the gun he fired was loaded.
The jury found the defendant guilty on all counts. This appeal followed. According to the defendant, the neighborhood’s dangerousness was relevant to his self-defense claim because it showed his state of mind when the altercation occurred. The defendant also contends that the probative value was not substantially outweighed by the danger of unfair prejudice.
“The standard of review for admissibility of evidence is abuse of discretion, limited by the rules of evidence.” Shermer v. State, 16 So.3d 261, 265 (Fla. 4th DCA 2009). “Relevant evidence is evidence tending to prove or disprove a material fact.” § 90.401, Fla. Stat. (2008). “Relevant evidence is inadmissible if its probative value is substantially outweighed by *410 the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.” § 90.403, Fla. Stat. (2008).
We have recognized that a defendant’s state of mind can be relevant to the issue of self-defense. Ruddock v. State, 763 So.2d 1103, 1105 (Fla. 4th DCA 1999); see also Filomeno v. State, 930 So.2d 821, 822 (Fla. 5th DCA 2006) (state of mind is “a relevant inquiry on the question of self-defense”). Indeed, “[t]he standard jury instruction for self-defense recognizes that a defendant’s perceptions of the surrounding events are relevant when assessing the reasonableness of the use of force in self-defense.” Filomeno, 930 So.2d at 822-23 (citing Fla. Std. Jury Instr. (Crim.) 3.6(f) (“A person is justified in using deadly force if [he][she] reasonably believes that such force is necessary to prevent ... imminent death or great bodily harm to [himself] [herself] or another....”)).
However, in this case, the neighborhood’s alleged dangerousness was not relevant to the defendant’s self-defense claim. When the defendant took the stand, his self-defense claim focused almost entirely on his altercation that night with the victim, and not with anyone else. Given the defendant’s testimony, we do not see how evidence of the neighborhood’s alleged dangerousness would have aided the jury’s understanding of his self-defense claim. See Filomeno, 930 So.2d at 823 (psychologist’s testimony of characteristics of “fight or flight” response would not have aided jury’s understanding of the issue of self-defense where defendant testified at length why he felt he could not flee).
We also agree with the trial court that, even if the neighborhood’s alleged dangerousness was relevant, the probative value was substantially outweighed by the danger of unfair prejudice. In granting the state’s motion, the trial court reasoned, “the same way ... it is improper for the [s]tate to elicit from a law enforcement officer that the neighborhood is a high crime [] neighborhood, conversely that would be true of [the defendant].” The trial court apparently was referring to case law addressing whether the identification of a location as a high-crime area unduly prejudices a defendant who is arrested there. The supreme court has held that such identification could be unduly prejudicial, “but is not always so.” Gillion v. State, 573 So.2d 810, 811 (Fla.1991). For example, where an officer testifies relative to activities observed on one evening in an area, without labeling that area as high-crime, such testimony may be relevant to clarify why the area was selected for a police operation. Id. On the other hand, where an officer testifies that an area has a reputation for crime, the inference to be drawn from such testimony may be patently prejudicial to a defendant. Id. (citing Beneby v. State, 354 So.2d 98, 99 (Fla. 4th DCA 1978)). The supreme court ultimately held that “[wjhether or not undue prejudice exists depends on the facts of each case.” Id. at 812 (emphasis added).
Looking at the facts of this case, we find the identification of this neighborhood as a high-crime area would have unduly prejudiced the state. The defendant obviously intended to suggest that, because the neighborhood allegedly was dangerous, the victim must have been dangerous. Such an unsupported inference is improper. See Wheeler v. State, 690 So.2d 1369, 1371 (Fla. 4th DCA 1997) (state’s argument to the jury that, because area of arrest was known for cocaine sales, defendant must have agreed to sell cocaine, prejudiced defendant by impermissibly implying guilt through association).
*411 Even if the trial court erred in granting the state’s motion, we would have considered any such error harmless beyond a reasonable doubt after our review of the record. See Ventura v. State, 29 So.3d 1086, 1089 (Fla.2010) (quoting State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986) (“The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction”) (emphasis added in Ventura ). Here, there is no reasonable possibility that the alleged error contributed to the conviction. Although the defendant testified that the victim’s alleged threats caused him to go inside the home, he later went outside to confront the victim. The defendant further conceded that, even though he did not see the victim with any weapon, he went into his girlfriend’s car and got a gun. Such testimony wholly undercut the defendant’s self-defense claim.
Moreover, despite the court’s order precluding the defendant from eliciting testimony regarding the neighborhood’s alleged dangerousness, the defendant still testified, without objection, “[i]t is a rough neighborhood.” The defendant also testified, without objection, that he interpreted the victim’s alleged statements before the shooting as a serious threat to his life “because this is the hood and ... people don’t make threats like that and don’t carry them out and if someone say something like that you take it seriously and you never know what this person is going to do to you.” (emphasis added). Thus, the jury heard at least a summary of the very evidence which the defendant wished to present, and yet the jury still found the defendant guilty on all counts. We see no reason to disturb this result.
On the manslaughter instruction issue, we affirm pursuant to our recent holding in Singh v. State, 36 So.3d 848 (Fla. 4th DCA 2010). As in Singh, we find that the trial court’s use of the erroneous manslaughter instruction was not fundamental error because the instruction gave the jury two options on the crime’s second element: either that the defendant “intentionally caused the death” of the victim, or that the death of the victim “was caused by the culpable negligence” of the defendant. Thus, the jury could have returned a verdict for the lesser-included offense of manslaughter by finding culpable negligence without an intent to kill, but found the defendant guilty of second-degree murder instead.

Affirmed.

TAYLOR and LEVINE, JJ., concur.