HAZOURI, J.
 

 Cedric Barnes appeals his conviction for burglary of a dwelling. He raises two points on appeal: (I) that the trial court erred in denying his motion in limine concerning collateral crime evidence and in finding it was an inseparable part of the burglary incident with which he was charged; and (II) that the trial court erred in overruling his objections to testimony by the arresting officer commenting on Barnes’s invocation of his right to remain silent. We agree on both points and reverse and remand for a new trial.
 

 Count I of the information charged Barnes and his codefendant Travis New-kirk with burglary of a dwelling owned by Andrew Greenfield. Counts II and III charged Newkirk with possession of bur
 
 *1118
 
 glary tools and petit theft of a lamp owned by Kathy Atria. Barnes was tried separately on count I.
 

 Prior to trial, Barnes filed a motion
 
 in limine
 
 to exclude the testimony of Atria concerning collateral crime evidence. The substance of the objected to testimony dealt with events which occurred prior to the burglary at Greenfield’s residence. Atria was expected to testify:
 

 2.... [T]hat on May 7, 2008, someone rang her door bell, she looked out the fisheye peephole and saw an African American male whom she did not know. Mrs. Atria did not open her door, but watched as the man bent down and picked up a UPS box previously delivered to her home. At that time, the man, who is believed to be the co-defendant, Travis Newkirk, carried the box to the car and handed it to the passenger. Mr. Newkirk then proceeded to prowl around the house. Mr. Newkirk approached the front door again and rang the bell at which point Mrs. Atria responded and the man left.
 

 8. Mrs. Atria noted the tag number on the vehicle and reported the suspicious activity.
 

 4. Based on Mrs. Atria’s report the police were called, located the vehicle and subsequently arrested the Defendant, CEDRIC BARNES[,] and TRAVIS NEWKIRK.
 

 5. Mrs. Atria was not able to identify the passenger of the vehicle.
 

 Barnes argued that these were prior bad acts that did not tend to prove a material fact associated with the burglary. Barnes was not charged with these acts in the information. The state argued that the testimony was admissible because it was inextricably intertwined with the crime charged and it led the police to the location of the burglary. Atria could not identify either defendant but she could tell the man in the car was African American.
 

 The state had not filed notice of other prior acts as required by section 90.404(2), Florida Statutes. The state asserted that its failure to give notice was not fatal because the testimony was not being offered as Williams
 
 [1]
 
 rule evidence. The trial court denied the motion finding that the evidence was not
 
 Williams
 
 rule but that it was inextricably intertwined with the burglary charge.
 

 FACTS DEVELOPED AT TRIAL
 

 After receiving the call from Atria the Hollywood Police Department dispatched Officer William Scalzetti to an area around 3550 North 55th Avenue to look for a gray Toyota Corolla with a specific tag number supplied by Atria. He found it on the south swale of 32nd Street, a couple blocks from 55th Avenue and called for assistance.
 

 Officer Anthony Pimentel testified that on May 7, 2008, at about 1:00 p.m., he was dispatched to where Scalzetti had located the vehicle. He approached the vehicle and realized no one was in the Toyota. When he got close to it, he heard “a metallic to glass sound, when you’re prying against glass, the crackling of glass and metal.” He stood on a nearby junction box and looked over a tall fence which bordered Greenfield’s backyard. He saw two black males in white T-shirts and dark pants. One was in front of a set of French doors with his elbow moving back and forth in a prying motion. The other one was at the other set of French doors with his hands up against the glass, blocking the glare, and cupping his eyes. He was looking into the house. Pimentel went through the gate, gun drawn and made
 
 *1119
 
 contact with the suspects. He commanded that they show him their hands and get on the ground, which they did. He identified Barnes as the person he saw looking into the doors. Scalzetti joined him and took Newkirk into custody. Pimentel handcuffed Barnes and transported him to the police station.
 

 As to point I, Barnes argues that the testimony of Atria concerning the theft of the parcel was irrelevant to the other evidence elicited to prove the burglary and was not inextricably intertwined with the burglary allegations. We agree.
 

 “A trial court’s ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion.”
 
 McCall v. State,
 
 941 So.2d 1280, 1288 (Fla. 4th DCA 2006) (citation omitted). “However, this discretion is limited by the rules of evidence.”
 
 Id.
 

 In
 
 McCall,
 
 the defendant was drinking in a bar and decided to sleep in an unlocked car where he was awakened by troopers. As he got up, the jacket covering his torso fell to the floorboard and a short time later the troopers discovered a firearm underneath the jacket. McCall was charged with possession of a firearm by a convicted felon and carrying a concealed weapon. McCall made a motion in limine to preclude the state from presenting evidence that he was arrested in a stolen vehicle and that the serial numbers on the firearm were obliterated. The trial court granted the motion but during the trial the court overruled McCall’s objections to several references to the stolen car and the obliterated serial numbers. His motions for mistrial were also denied. He was found guilty of the possession of a firearm by a convicted felon. This court reversed for a new trial, finding:
 

 Here, the evidence that the car was stolen, or even missing, is not inextricably intertwined with the underlying crime. Absent this evidence, the state would not be unreasonably hampered in explaining how the charged crime came to light. All the jury needed to hear was that the vehicle in which McCall was found was not his, and that it belonged to Louis, who did not know McCall and did not own the jacket or the gun. Thus, it was not necessary or appropriate that the jury hear that the vehicle was missing or stolen from Louis, in order to explain how McCall ended up in the vehicle.
 

 Id.
 
 at 1283-84.
 

 In the instant case, the testimony that Newkirk stole the package from Atria and that someone in the car helped Newkirk put the box in the car is not inextricably intertwined with the burglary of the Greenfield home, nor was the state unreasonably hampered in presenting its case against Barnes.
 

 “The erroneous admission of collateral crimes evidence is presumptively harmful.” “Evidence that suggests a defendant has committed other crimes or bad acts can have a powerful effect on the results at trial.” Evidence of collateral crimes or bad acts is admissible only when relevant to prove a material fact at issue. § 90.404(2)(a), Fla. Stat. (2005). Moreover, even relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. § 90.403, Fla. Stat. (2005).
 

 Id.
 
 at 1283 (citations omitted).
 

 This error is not harmless beyond a reasonable doubt
 
 [2]
 
 as Barnes’s defense was that he was just trespassing in Greenfield’s back yard. Permitting the testimony of
 
 *1120
 
 Atria concerning the uncharged collateral crime would certainly support the state’s claim that Barnes in conjunction with Newkirk were engaged in a series of thefts. We therefore find the trial court erred in permitting into evidence the testimony concerning the collateral crime of theft of Atria’s lamp.
 

 As to point II, during Pimentel’s direct examination the following occurred:
 

 Q. Tell the jury, in the process of explaining to Mr. Barnes what was going to happen at the station, in terms of the procedures, when somebody is arrested, did he say anything to you?
 

 A. Yes.
 

 Q. What did he say?
 

 A. I was letting him know what the process would be, informing him he would have the opportunity to speak with a detective.
 

 At that point, he told me he didn’t have anything to say to me or any detectives.
 

 MS. TOLLEY [defense counsel]: Objection. Sidebar.
 

 THE COURT: Sure.
 

 (Sidebar had.)
 

 MS. TOLLEY: I’m moving for a mistrial based upon the inappropriate comment on the defendant’s right to remain silent.
 

 MS. VAUGHAN: He said I don’t have anything to say. It is a qualitative statement of guilt. The officer didn’t question him. It was a spontaneous statement. You have to look at it in context. It is not saying I don’t want to talk. I don’t have a statement.
 

 THE COURT: It is governed by Commissary and 403 comparison.
 

 When you look at it in totality of the circumstances of this case, it is more probative than prejudicial. The motion for mistrial is denied.
 

 (Sidebar concluded.)
 

 BY MS. VAUGHAN:
 

 Q. You can continue, Officer Pimentel.
 

 A. He advised me he didn’t have anything to say, that we had minimum [sic] dead to rights.
 

 Barnes argues and we agree that it was error to permit Officer Pimentel to testify concerning his conversation with Barnes as it was an improper comment on Barnes’s right to remain silent. At the time this comment was evoked by Officer Pimentel, Barnes was clearly in custody. Before engaging Barnes in any conversation Pimentel had an obligation to advise Barnes of his
 
 Miranda
 
 rights, which he failed to do.
 

 In
 
 Ventura v. State,
 
 29 So.3d 1086 (Fla.2010), the supreme court held:
 

 Unlike some evidentiary errors, such as the admission of a cumulative or irrelevant photograph, a comment on the right to remain silent strikes at the heart of our criminal justice system. This Court has clearly stated that it is constitutional error to penalize an individual for exercising the Fifth Amendment privilege; therefore, the prosecution may not introduce during trial the fact that an individual has relied upon this protection in the face of accusation.
 

 [[Image here]]
 

 Accordingly, commenting on the silence of an accused is
 
 not
 
 a viable strategy for obtaining convictions, and any comment — direct or indirect — by
 
 anyone at trial
 
 on this right is constitutional error that should be avoided.
 

 Id.
 
 at 1088-89.
 

 At the point when Barnes objected to the initial statement, the state argued that this was a “qualitative statement of guilt,” and spontaneous. In overruling Barnes’s objection, the trial court found this testimony to be more probative than prejudi
 
 *1121
 
 cial. This was not a spontaneous statement by Barnes because he said it in response to Pimentel explaining to him the process that would occur at the police station and his opportunity to speak to a detective.
 

 Reversed and remanded for a new trial.
 

 POLEN and TAYLOR, JJ., concur.
 

 [1]
 

 .
 
 Williams v. State,
 
 110 So.2d 654 (Fla.1959).
 

 [2]
 

 .
 
 See State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986).