WARNER, J.
Kenneth Atkins appeals his conviction for sexual battery and claims that the court erred in admitting a taped telephone conversation between the victim and her Mend, as admission of the conversation violated the wiretap statute, sections 934.03-934.09, Florida Statutes. Because the conversation was not taped for the purpose of obtaining evidence of a criminal act, it was improperly admitted. We reverse.
Atkins was charged with sexual battery by multiple perpetrators. The incident occurred at a party where A.S., the victim, was present. Her Mend, Jamie Doctor, was also present and introduced A.S. to Atkins. According to A.S.’s trial testimony, she was sexually assaulted by multiple young men, including Atkins, at the pool of the apartment complex where the party was held. After the attack, a hysterical A.S. found Doctor and told her what happened. Doctor looked “in shock” and walked off.
An anonymous caller reported the assault to the police, and an officer then went to the complex and found A.S. who told the officer she had been assaulted. A.S. was escorted to the police station to give a statement and also to the hospital for the administration of a rape kit test. Atkins was arrested several days later for the sexual assault and was subsequently tried and convicted for the crime.
At some point when A.S. was at the police station, one of the investigating detectives directed A.S. to tape record any conversations with the suspects, which the detective also testified to at trial. A conversation with Atkins two days after the incident was admitted at trial.
A.S. also recorded a conversation with Jamie Doctor which she had with her within a few hours after the incident. At trial, Doctor testified for the defense that she had seen A.S. drinking rum and doing drugs. She saw A.S. with Atkins and another Mend by the pool, and A.S. did not look upset. In fact, she took off her top and “put on a show for everybody.” Doctor testified that she then walked A.S. back to the party. Not until they got back to the apartment did A.S. say she had been raped, and Doctor testified that she did not believe her, because she was not crying or upset at all.
Upon cross-examination by the prosecutor, Doctor admitted that she telephoned A.S. shortly after the incident. However, she denied that A.S. asked her where she *680 (Doctor) had gone or what she had done after A.S. told her about the rape. The prosecutor asked Doctor if she wanted to hear the tape recorded conversation, to which the defense objected, first on hearsay grounds and then because the wiretap statute was violated by the recording of the conversation. The court overruled the objection, and the tape was played first for Doctor, who still did not remember the conversation, and then for the jury. In the short section played, Doctor was heard stating to A.S. that she told Atkins in rather strong language that she hated him and she told other persons around the party what occurred, thus impeaching Doctor’s prior testimony that she did not believe a rape occurred. The admission of this tape is the subject of this appeal.
Section 934.03 makes intentional interception of telephone conversations unlawful, unless it falls within the exceptions of the act. Section 934.03(2)(c) provides a law enforcement exception:
It is lawful under ss. 934.03-934.09 for an investigative or law enforcement officer or a person acting under the direction of an investigative or law enforcement officer to intercept a wire, oral, or electronic communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.
We agree with Atkins that the recording of this conversation was not authorized under the statute and went beyond the directions of the officer as to what was permissible to record.
The statute permits a law enforcement officer to direct the recording of a conversation with a consenting participant where the “purpose of such interception is to obtain evidence of a criminal act.” § 934.03(2)(c), Fla. Stat. In State v. Napoli, 373 So.2d 933 (Fla. 4th DCA 1979), our court determined that the recording of a conversation between a state investigator posing as a clerk for a judge and a defendant was permissible under section 934.03(2)(c). There, the defendant had already approached the investigator with a bribe. The officer secured a body bug and then met with the defendant and recorded the bribe. Thus, the purpose of the recording was to obtain “evidence of the criminal act,” i.e., the bribe itself. Id. at 935; § 934.03(2)(c), Fla. Stat.
Other cases have held that where the purpose of the recording was to obtain an admission from the defendant, a recorded conversation with the defendant also complies with the statute. See Thompson v. State, 731 So.2d 819 (Fla. 5th DCA 1999); State v. Stout, 693 So.2d 657 (Fla. 4th DCA 1997); Franco v. State, 376 So.2d 1168 (Fla. 3d DCA 1979). We have not found a single case in which any court has approved the admission of a recorded conversation under section 934.03(2)(c), or pursuant to other counterparts around the country, which did not involve a conversation with the defendant being tried and was either part of a criminal act itself or an admission of a criminal act. See also Eric H. Miller, Annotation, Permissible warrantless surveillance, under state communications interception statute, by state or local law enforcement or one acting in concert with officer, 27 A.L.R.4th 449 (1984).
We conclude that a conversation surreptitiously recorded with a mere witness is not the type- of conversation allowed under section 934.03(2)(c). In this case, Doctor was not even a witness to the crime but instead encountered A.S. after the incident. Recording her conversation was not for the purpose of obtaining evidence of a criminal act. Even if we pre *681 sume that the officer’s direction to A.S. was to record calls of the suspects or “anyone else who was trying to influence or threaten or coerce her,” that did not include conversations from concerned friends who happened to be at the party.
Of course, had Doctor threatened her or attempted to coerce her, then the call would have been admissible in a prosecution of Doctor herself for witness tampering. The call would have been used as evidence of a criminal act. In this respect, it would have been similar to State v. Sobel, 743 So.2d 38 (Fla. 5th DCA 1999), where the officers were investigating a case of child abuse and could not find the child victim who had reported the abuse. They enlisted the help of a friend of the child, who contacted Sobel, the child’s mother. In a recorded conversation, Sobel encouraged the friend to lie to the police. That conversation was the basis of the charge against her. The fifth district held that the recording of that conversation fell within the authority of section 934.03(2)(c) even though at the time of the call Sobel was not implicated in any crime. Id. at 38. Judge Sharp wrote a strong dissent. We do not have to decide whether we agree or disagree with the majority in Sobel in this case, because it is factually distinguishable, as we have just explained.
The recording of the conversation between A.S. and Doctor violated section 934.03. It therefore was inadmissible. Section 934.06 provides:
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter.
The state, however, suggests that the conversation should still be admissible as impeachment, pointing to Washington v. State, 432 So.2d 44 (Fla.1983), in which the supreme court relied on Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and permitted a defendant’s prior inconsistent statement to be admitted even though it was otherwise inadmissible under Miranda.[1]
The warning requirements under Miranda are judicially created constitutional guidelines for law enforcement to follow. See Dickerson v. United States, 530 U.S. 428, 439, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Central to the Harris court’s decision to permit a defendant’s statement in violation of Miranda to be used as impeachment was the notion that the Miranda exclusionary rule is designed to have a deterrent effect on proscribed police conduct and that “sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.” Harris, 401 U.S. at 225, 91 S.Ct. 643. Thus, its focus continued to be on the deterrent function of Miranda to police officers.
Our supreme court rejected a similar argument to permit otherwise inadmissible wiretap recordings into evidence in State v. Garcia, 547 So.2d 628 (Fla.1989). The court considered whether the good faith exception to the exclusionary rule authorized by United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), should be applied to the exclusionary provisions of the Florida wiretap law, so that evidence obtained in violation of the statute could still be admitted. The *682 court determined that there was a difference between the exclusionary rule and the statute:
[T]he fourth amendment’s exclusionary rule operates as “ ‘a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.’ ” Leon, 468 U.S. at 906, 104 S.Ct. at 3411 (quoting United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)).
The exclusionary rule in this case, however, is statutorily mandated. Chapter 934, Florida Statutes, pertaining to security of communications, unequivocally expresses the Legislature’s desire to suppress evidence obtained in violation of that chapter.
Garcia, 547 So.2d at 630. Because it is a statutory mandate, the court held that the good faith exception could not apply to permit introduction of illegally intercepted communications. The prohibition of the statute was absolute. Therefore, based upon section 934.06, the tape recording is inadmissible to impeach Doctor.
Finally, we conclude that the admission of the tape recording was not harmless. In a sexual battery case such as this, where the issue is whether the victim consented to the act, the credibility of the witnesses is at the heart of the trial. Here, the playing of the tape undermined the credibility of Doctor who testified both that she disbelieved A.S. when she told her she had just been raped and that A.S. did not appear upset when she stated that she had been raped. This was critical evidence, and we cannot say beyond a reasonable doubt that the verdict was not affected by the error. See State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986).
For the foregoing reasons, we reverse the judgment and conviction and remand for a new trial.
STEVENSON, C.J., and HAZOURI, J., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).