HARRIS, J., dissenting.
While I agree with the majority that the trial court erred in admitting the recorded telephone call between the Mother and Smith, I cannot agree that the error was harmless beyond a reasonable doubt. I dissent.
Our supreme court has held that the exclusionary rule in section 934.06, Florida Statutes (2016), is statutorily mandated. State v. Garcia, 547 So.2d 628, 630 (Fla. 1989) ("Chapter 934 ... unequivocally expresses the Legislature's desire to suppress evidence obtained in violation of that chapter."). Because it is a statutory mandate, the Court held that exceptions such as good faith do not apply to permit the introduction of illegally intercepted communications. The prohibition of the statute *719 is absolute. See Atkins v. State, 930 So.2d 678, 682 (Fla. 4th DCA 2006).
The admission of the illegally recorded call in this case was clearly error. Even though the recording itself was innocuous, containing, as the majority points out, no discernible intelligible statements made by Smith, the harm comes not from the contents of the recording but rather from what admission of the recording allowed the State to do. For example, the State played for the jury a recorded interview between Smith and the lead homicide detective in the case. In this recording, the detective told Smith that he too listened to the recorded conversation, and even though Smith still did not recall or could not make out what he said, the detective said, "I'll tell you what you said." The detective then told Smith about statements that the detective believes Smith made in that unintelligible conversation, which were consistent with those that the Mother attributed to Smith.
Under these facts, there is undoubtedly a risk that a jury could conclude that a seasoned homicide detective is better trained and experienced than they are to discern statements made in an otherwise unintelligible recording and that a jury might very well defer to the detective's interpretation. This alone creates a reasonable possibility that the error contributed to the conviction. Contrary to the concurring opinion, a finding that the recording impacted the jury's verdict is not required-only that there is a possibility that it could have.
The inherent harm in allowing the detective to use the recording to corroborate the Mother's version of events was noted by our supreme court when it took the "opportunity to caution trial courts to guard against allowing the jury to hear prior consistent statements which are not properly admissible. Particular care must be taken to avoid such testimony by law enforcement officers." Rodriguez v. State, 609 So.2d 493, 500 (Fla. 1992). "When a police officer, who is generally regarded by the jury as disinterested and objective and therefore highly credible, is the corroborating witness, the danger of improperly influencing the jury becomes particularly grave. Under the circumstances, the error in admitting [the evidence] cannot be considered harmless." Perez v. State, 371 So.2d 714, 717 (Fla. 2d DCA 1979).
Because it was error to admit the recorded conversation, it then became incumbent upon the State, as the beneficiary of that error, to prove "that there is no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986). Under this analysis, it is not the role of the appellate court to determine whether the evidence of guilt is sufficient or even overwhelming based on the properly admitted evidence. Id. at 1136. The "harmless error analysis must not become a device whereby the appellate court substitutes itself for the jury, examines the permissible evidence, excludes the impermissible evidence, and determines that the evidence of guilt is sufficient or even overwhelming based on the permissible evidence." Id. That is precisely the analysis undertaken and relied upon in the majority opinion. Therefore, I disagree with the majority's conclusion that admission of the illegally obtained recording was harmless in light of the "extensive and compelling" evidence of guilt.
Properly applied, the harmless error test does not focus on the strength of the State's case, but on the effect of the error on the jury. See Johnson v. State, 53 So.3d 1003, 1007 (Fla. 2010).
So even in instances where the State has produced overwhelming evidence of guilt, and we do not think we would *720 characterize the permissible evidence considered by the jury in the instant case as overwhelming, the State may still fail to meet its burden if we determine that there was a reasonable possibility that the error affected the verdict. Johnson ; Ventura v. State, 29 So.3d 1086, 1089 (Fla. 2010) (holding that the lower court applied the wrong harmless error analysis when it concluded that the detective's comments on defendant's silence were "harmless beyond a reasonable doubt given the overwhelming evidence of guilt" (citation omitted) ); DiGuilio, 491 So.2d at 1139 (cautioning that the harmless error test is not "an overwhelming evidence test"); see also Cooper v. State, 43 So.3d 42, 43 (Fla. 2010) (explaining that the harmless error test "is not a strong evidence test. Rather, the test is 'whether there is a reasonable possibility that the error affected the verdict.' " (quoting DiGuilio, 491 So.2d at 1139 ) ).
Horne v. State, 127 So.3d 898, 905 (Fla. 5th DCA 2013). A review of the entire record in this case shows that, in addition to the evidence which incriminated Smith, there was also evidence that the Mother could have been the one who committed the crime. In fact, there was enough evidence implicating the Mother that the homicide detective in this case initially obtained and served an arrest warrant on the Mother, charging her with the death of the child. A critical component of Smith's defense was that the Mother must have been the one to inflict the fatal injuries on her child; thus, the respective credibility of the Mother and Smith was at the heart of this case.
By allowing the admission of this illegally recorded telephone conversation-a conversation where not one intelligible comment was attributed to Smith-the trial court in essence allowed the Mother to tell the jury her version of what Smith said. At one point, the State even asked her if, even though Smith's statements were unintelligible, "did he say the things [on that recording] that you told us he said?" The Mother answered in the affirmative. The one-sided conversation, consistent with the Mother's trial testimony, was admitted and played to corroborate her version of events. A witness's prior consistent statement may not be used to bolster her trial testimony, Lamb v. State, 357 So.2d 437, 438 (Fla. 2d DCA 1978), because it puts a "cloak of credibility" on the witness's testimony. Brown v. State, 344 So.2d 641, 643 (Fla. 2d DCA 1977). Further, while the Mother could have testified similarly had the recording been excluded, the playing of the recording and repeated references to it throughout the trial created a reasonable doubt that the jury's verdict could have been affected by the impermissible evidence.
Perhaps the error in admitting the recorded conversation could have been harmless had the State merely made a passing reference to the recording. To the contrary, however, the recording came up in the State's opening, extensively during the direct examination of both the Mother and the detective, and repeatedly in the State's closing. At one point, the State even argued about all the other things Smith could have said in the recorded call but chose not to. This allowed the jury to hear not only conflicting and one-side accounts of what Smith allegedly said, but also comments about what he could have said, all from a completely unintelligible conversation between Smith and the only other person ever considered to be a suspect, someone who clearly had motive to point blame at Smith.
Admitting this recording opened the door for the State's witnesses and the prosecutor to tell the jury what they believe *721 Smith said (or did not say) in the conversation. It was a focal point of the State's case throughout the trial and was used repeatedly to improperly corroborate the Mother's version of events. As credibility was unquestionably an issue in this case, I can find no circumstance where the admission of the illegally obtained recording could be considered harmless. I would reverse.